**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: _____

| | |
|---|---|
| **CARGO AIRCRAFT MANAGEMENT, INC.,** | §<br>§<br>§ |
| *Plaintiff,* | |
| v. | §<br>§<br>§ |
| **GLOBAL AIR FLEET LLC, and ASIAN AIR LTD.** | §<br>§<br>§<br>§ |
| *Defendants.* | § |

------------------------------------------------------------/

**PLAINTIFF'S VERIFIED COMPLAINT AND**
**REQUEST FOR PREJUDGMENT WRIT OF REPLEVIN**

Plaintiff Cargo Aircraft Management, Inc. ("Plaintiff" or "CAM") hereby files its Verified Complaint and Request for Prejudgment Writ of Replevin against Global Air Fleet LLC ("Global"), and Asian Air Ltd. ("Asian Air") (collectively, "Defendants") and respectfully shows the Court the following:

**I.      NATURE OF THE ACTION**

1.      Plaintiff CAM seeks to recover a Boeing 767 aircraft and related aircraft documents it owns that were leased to Global and subleased to Asian Air. Both the lease and the sublease were terminated for nonpayment, but the aircraft has not been returned to CAM and is still in possession of and being operated by Asian Air. CAM is thus suffering irreparable harm due to Asian Air's wrongful possession of the aircraft and aircraft documents CAM rightfully owns.

1

2.      Moreover, CAM has not received more than $800,000[1] in payments due under the Aircraft Lease Agreement (as defined herein), which was executed on January 7, 2014, and will continue to suffer significant financial losses in the future.

3.      Accordingly, CAM files this Complaint for breach of contract and conversion and seeks damages as well as a prejudgment writ of replevin and preliminary injunction to immediately regain possession of its aircraft and aircraft documents and to stop the irreparable harm it is suffering.

## II.      PARTIES

4.      Plaintiff Cargo Air Management, Inc. is a Florida corporation with its principal place of business at 145 Hunter Drive, Wilmington, OH 45177.  It is in the business of purchase, conversion, and lease of cargo aircraft.

5.      Defendant Global Air Fleet, LLC is a Connecticut Limited Liability Company with its principal place of business in Danbury, Connecticut.  It is in the business of sourcing, leasing, and remarketing passenger and cargo aircraft, and regularly conducts business in the state of Florida.  It can be served with process through its registered agent Michael A. Ferreira at 42 Candlelight Drive, Danbury, CT 06810.

6.      Defendant Asian Air, Ltd. is a Limited Company organized under the laws of Thailand with its principal place of business in Bangkok, Thailand.  It is a commercial airline with operations in Thailand.  It can be served with process through its agent set forth in the Sublease Agreement (as defined herein), Mr. David Cechludom, 51/39 Ngam Wong Wan Road, Lad Yao Sub-District, Chatuchak District, Bangkok, Thailand 10900, david@asianair.co.th.

---

[1] This number represents the minimum amount owed to CAM; it does not reflect additional rent due for certain maintenance reserves, interest, or other damages.

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

### III.   JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy well exceeds $75,000 and the parties are completely diverse in citizenship.

8.      This Court has both general and specific jurisdiction over Global because it continuously and systematically conducts business in Florida, and a substantial portion of the actions giving rise to this lawsuit occurred in Florida, including the maintenance, inspection, and delivery of the subject aircraft.

9.      This Court has specific jurisdiction over Asian Air because a substantial portion of the actions giving rise to this lawsuit occurred in Florida, the maintenance, inspection, and delivery of the subject aircraft to Asian Air.

10.     Venue is proper in this Court because a substantial portion of the events giving rise to this action occurred in this Court's district, including the maintenance, inspection, and delivery of the subject aircraft. *See* 28 U.S.C. § 1391(b)(2).

### IV.   FACTUAL BACKGROUND

**Overview and Introduction**

11.     CAM is the world's largest lessor of Boeing 767-200SF (Special Freighter) aircraft and also leases other aircraft types.  It has a fleet of more than 70 Boeing aircraft that are engaged in or available for long-term lease in the United States and abroad.

12.     On January 7, 2014, CAM and Global executed an Aircraft Lease Agreement (MSN 23307) (the "Lease") under which CAM agreed to lease to Global a Boeing Model 767-2J6/ER Aircraft with serial number 23307, together with two aircraft engines, manufactured by Pratt & Whitney with Model number JT9D-7R4E and serial numbers 716909 and 716913, (the

"Aircraft"), and the aircraft documents listed in Appendix C to the Lease, along with all other records, documents, log books, manuals, drawings, and data relating to the Aircraft and developed or caused to be developed by the operator of the Aircraft or required by the Federal Aviation Administration ("FAA"), as updated and maintained through the Return Date ("Aircraft Documents"). A true and correct copy of the Lease is attached hereto as **Exhibit A**.

13.     As contemplated by the Lease, Global and Asian Air on the same day executed an Aircraft Sublease Agreement (MSN 23307) (the "Sublease") under which Global Agreed to sublease to Asian Air the same Aircraft and Aircraft Documents that were the subject of the Lease. A true and correct copy of the redacted Sublease is attached hereto as **Exhibit B**.[2]

14.     Notably, the parties agreed that Asian Air's rights under the Sublease were subordinate to the Lease in all respects. Specifically, Asian Air understood and acknowledged that "its right of quiet enjoyment in the Aircraft under [the Sublease] is subject at all times to the rights and remedies of [CAM] under the Master Lease, including, without limitation, such rights and remedies which arise under the Master Lease upon the occurrence and continuance of an Event of Default (as defined in the Master Lease)." Ex. B. at 1 ¶ 1.1 (b).

15.     Pursuant to the Lease and Sublease, the Aircraft and Aircraft Documents were delivered to Global and in turn to Asian Air in Miami, Florida, on January 8, 2014. *See* Lease Supplement No. 1 attached hereto as **Exhibit C** ("Lease Supplement No. 1") (acknowledging delivery); *see also* Ex. A at 4 ¶ 1.37 (defining "Delivery Location" as "the facility of Miami Tech at Miami International Airport, Miami Florida, USA"); Ex. B at 4 ¶ 2.35 (same).

---

[2] Apparently, under the terms of the Sublease, Asian Air agreed to pay Global a rental rate that was higher than the rate agreed to under the Lease. As a result, the executed version of the Sublease Global provided to CAM and attached hereto as Exhibit B was redacted by Global to remove the exact amounts of payments due thereunder. To CAM's knowledge, all other materials terms of the Sublease are included in the version attached as Exhibit B.

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

Thereafter, Asian Air registered the Aircraft under Thai law and began operating the Aircraft in Thailand. The Thai registration number for the Aircraft is HS-DCM.

16.     Global failed to make payments to CAM in accordance with the terms of the Lease. Accordingly, CAM terminated the Lease pursuant to the provisions therein on July 15, 2014, and demanded the Aircraft and Aircraft Documents be returned to Wilmington Air Park, Wilmington, Ohio, USA. A true and correct copy of the Notice of Termination is attached hereto as **Exhibit D**.

17.     Because the Sublease is subordinate to the Lease, the termination of the Lease resulted in the immediate termination of the Sublease. A true and correct copy of the Notice of Termination to Asian Air is attached hereto as **Exhibit E**.

18.     Despite the termination of the Lease and Sublease and CAM's demand for the return of the Aircraft and Aircraft Documents, the Aircraft and Aircraft Documents have not been returned to CAM. Instead, upon information and belief, the Aircraft is still being operated by Asian Air in Thailand.

19.     On September 11, 2014, CAM filed a lawsuit against Asian Air in Thailand in an attempt to regain possession of the Aircraft and Aircraft Documents. To date, that litigation has not resulted in the recovery of the Aircraft or Aircraft Documents. A true and correct copy of the Complaint filed in the Thai litigation is attached hereto as **Exhibit F**.

**The Lease and Sublease**

20.     In 2013, CAM and Global began negotiations to lease the Aircraft (which is configured for use as a passenger airliner) to Global. After subsequent discussions, CAM agreed to lease the Aircraft to Global, which would in turn sublease it to Asian Air. To CAM's best

knowledge, information, and belief the value of the Aircraft and Aircraft Documents is presently approximately $6 million.

21.     To carry out this agreement, CAM and Global executed the Lease on January 7, 2014. CAM retained full ownership of and title to the Aircraft. In recognition of this, the parties expressly agreed that "[a]t all times during the Term, full legal title to the Aircraft … shall remain vested in [CAM] to the exclusion of [Global], notwithstanding the delivery thereof to, and the use by [Global]." Ex. A at 12 ¶ 3.3. A similar provision explicitly recognizing CAM's title to the Aircraft was included in the Sublease. *See* Ex. B at 11 ¶ 4.3. CAM's ownership is evidenced and established by the Certificate of Ownership, Full Warranty Aircraft Bill of Sale, and Articles of Merger ("Aircraft Title Documents"), a true and correct copy of which is attached hereto as **Composite Exhibit G.**

22.     The Lease contemplated and approved of the Sublease to Asian Air and provided a form of sublease to be executed by Global and Asian Air. *See* Ex. A at 22, ¶ 6.10(a),(c) ("Lessor hereby approves Lessee's sublease of the Aircraft to Asian Air… [t]he Sublease shall be in the form attached hereto … Lessee may not enter into any amendment of that form without the prior written approval of Lessor…"). Both the Lease and the Sublease are to be governed by Florida law. *See* Ex. A at 55 ¶ 20.6; Ex. B at 49 ¶ 21.6.

23.     Importantly, however, Global retained all of its obligations in the Lease despite the Sublease to Asian Air. Specifically, Global agreed in the Lease that:

> [Global] may delegate to Asian Air the performance of any non-monetary obligations [Global] is required to perform under this Agreement. However, notwithstanding any such delegation, [Global] shall remain fully and individually responsible for the performance of all obligations of [Global] under this Agreement, whether or not the same are delegated to Asian Air under the Sublease Agreement, and the failure by Asian Air to perform any obligation delegated to Asian Air by [Global] shall not excuse such failure or performance hereunder.

6

Ex. A at 26 ¶ 6.10(f) (emphases added).

24.     Chief among Global's obligations in the Lease was to pay to CAM "Base Rent" of $90,000 per month commencing with delivery of the Aircraft and Aircraft Documents on January 8, 2014, and ending upon return of the Aircraft or a "Total Loss" of the Aircraft. *See* Ex. A at 15 ¶ 4.2; Ex. A, Appx. B at 1 ¶ 2. The Sublease contained nearly identical payment obligations on behalf of Asian Air to Global, save for the amounts due.[3] *See* Ex. B at 13 ¶ 5.2; Ex. B Appx. B.

25.     Global was also required to pay to CAM "Supplemental Rent" consisting of "Maintenance Reserves" based on the amount of hours the Aircraft was flown, subject to certain minimum required payments. *See* Ex. A at 16 ¶¶ 4.4-4.5; Ex. A, Appx. B at 1-3 ¶ 3; *see also* Ex. B at 14 ¶¶ 5.4, 5.5; Ex. B, Appx. B (similar terms in Sublease).

26.     Global agreed to "punctually pay to [CAM] when due all the monies specified and calculated" in the Lease (Ex. A at 45 ¶ 15.1(a)) and agreed that any overdue amounts were subject to 12% interest from the original due date. *See* Ex. A at 16-17 ¶ 4.7; 51 ¶ 16.3; Ex. A, Appx. B at 3 ¶ 4; *see also* Ex. B at 14, 39 ¶¶ 5.7, 16.1(a) (identical terms in Sublease).

27.     Global specifically agreed in the Lease that its "obligations to pay rent [under the Lease] shall be absolute and unconditional and shall not be affected by any circumstances…" Ex. A at 17 ¶ 4.9; *see also* Ex. B at 15 ¶ 5.9 (identical term in Sublease). As set forth above, this included any failure by Asian Air to pay amounts due under the Sublease. *See* Ex. A at 26 ¶ 6.10(f).

28.     Global's absolute obligation to pay rent does "not limit, restrict or otherwise affect any rights or remedies" of CAM against Global (Ex. A at 17 ¶ 4.9) and continues even

---

[3] *See* fn. 2, *supra.*

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

after termination of the Lease until the Aircraft and Aircraft Documents are returned to CAM and all applicable conditions of return are satisfied. *See* Ex. A at 52 ¶ 17.5(a) ("until [Global] has complied with the Return Conditions, [Global] shall continue to pay Basic Rent to [CAM]…"); *see also* Ex. B at 15, 46 ¶¶ 4.9, 18.5(a) (identical terms in Sublease).

29.     The failure of Global to make any rent payment under the Lease within five days of its due date is an Event of Default under the Lease if that missed payment is not cured by Global within five days of notification of the missed payment by CAM to Global. Ex. A at 47 ¶ 16.1.  Subsequent nonpayment within a twelve-month period constitutes an Event of Default without further notice or opportunity to cure. *Id.*  The Sublease contains an identical provision, declaring an Event of Default for nonpayment. Ex. B at 42 ¶ 17.1(a).

30.     Upon continuation of an Event of Default, the Lease provides CAM with several remedies which it may exercise at its option. *See* Ex. A at 49 ¶ 16.2.  The Sublease provided similar optional remedies. *See* Ex. B at 43 ¶ 17.2.

31.     First and foremost, CAM may terminate the Lease by "serving notice of such termination on [Global] in writing …, specifying the occurrence giving rise to such Event of Default, which notice shall cause [the Lease] to terminate immediately (without any further act, service, notification or proceeding being necessary)." Ex. A at 50 ¶ 16.2(d)(1).  Upon such termination, "[Global] shall promptly return the Aircraft and the Aircraft Documents …to [CAM] at the Return Location or at any airport in the continental United States specified by [CAM]." *Id.*  A similar termination provision appears in the Sublease. *See* Ex. B at 44 ¶ 17.2(d).

32.     In addition to and regardless of whether CAM elects any other remedies, it also may demand from Global "liquidated damages for loss of a bargain …": Ex. A at 50 ¶ 16.2(e). These damages consist of "any unpaid Basic Rent…, plus the present value of any Basic Rent

that would have been payable ... through the end of the Term had no Event of Default occurred, plus all reasonable out-of-pocket costs to [CAM] to re-let the Aircraft, less the present value of the fair market [or actual] rent ... received by Lessor with respect to the Aircraft through the end of the Term ... as reasonably determined by [CAM]." *Id.*; *see also* Ex. B at 44 ¶ 17.2(e) (identical liquidated damages term in Sublease).

33.     The Lease also preserves for CAM "any other remedial action available ... under applicable law." Ex. A at 49 ¶ 16.2(c); *see also* Ex. B at 45 ¶ 17.2(g).  Global further agreed that it would "pay to [CAM], upon demand, all reasonable costs, expenses and disbursements (including without limitation, reasonable attorney's fees and expenses) incurred by [CAM] in exercising its rights or remedies under [the Lease]." Ex. A at 51 ¶ 16.5.

34.     Recognizing the value of the Aircraft to CAM, the Lease specifically contemplates an order requiring specific performance of Global's obligation to return the Aircraft and Aircraft Documents:  "Timely return of the Aircraft and the Aircraft Documents on the Return Date and at the Return Location is of the essence of this Agreement and if the Aircraft or Aircraft Documents are not returned on the Return Date and at the Return Location, [CAM] may obtain a court order requiring Global to immediately return the Aircraft and the Aircraft Documents at the Return Location." Ex. A at 51 ¶ 17.4 (emphasis added); *see also* Ex. B at 46 ¶ 18.4 (identical term in Sublease).

35.     Because the value of the Aircraft is based in large part on the Aircraft Documents that document the operation of the Aircraft and the maintenance performed on the Aircraft and its component parts, the Lease sets forth an exhaustive list of aircraft inspection, maintenance, registration, and other documents that must be maintained with the Aircraft and updated by Global and Asian Air, in the English language, as required by applicable laws and by the

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

regulations of the FAA. Ex. A at 26 ¶ 7.2; Ex. A, Appx. C; *see also* Ex. B at 20 ¶ 8.2. These Aircraft Documents are required to be returned to CAM in the condition required by the Lease, including Appendix H to the Lease, at the conclusion or termination of the Lease. Ex. A at 52 ¶ 18.2; *see also* Ex. B at 49 ¶ 19.2 (identical provision in Sublease).

36.     As part of its obligation to maintain and update the Aircraft Documents, the Lease and Sublease require Global and Asian Air to provide written summaries "within ten (10) days after the end of each calendar month of the Term and on the Return Date . . . [certifying] the following events occurring during the previous calendar month: (1) Block Hours, Flight Hours, APU Hours and Cycles accrued on the Airframe and Engines; (2) all maintenance performed on the Airframe or Engines; and (3) any Engine changes." ("Written Summaries"). Ex. A. at 28 ¶ 7.8; *see also* Ex. B at 22 ¶ 8.8 (identical provision in Sublease).

37.     Contemplating the Sublease, the Lease allowed for registration of the Aircraft in Thailand but required that "[Global] will be responsible, at [Global's] cost, for causing the Aircraft to be re-registered in the United States." Ex. A at 17-18 ¶ 5.1(c); *see also* Ex. B at 15-16 ¶ 6.1(c).

38.     To help effectuate this re-registration upon termination, the Lease and Sublease required Global and Asian Air to execute, at CAM's request, "Lease Termination Documents" consisting of:

> (a) one or more executed lease termination agreements in a form or forms acceptable for filing with the FAA and each other relevant Governmental Entity; (b) any other documents required by the FAA and each other relevant Governmental Entity … (c) all documents required to effectuate a discharge at the International Registry of the international interest created by [the Lease] … and (d) such similar documents as [CAM] may require to terminate any sublease of the Aircraft, to secure deregistration of the Aircraft from any foreign registry and to secure the export of the Aircraft from any applicable foreign jurisdiction.

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

Ex. A at 13 ¶ 3.8; *see also* Ex. B at 12 ¶ 4.8 (requiring similar termination documents in the Sublease).

39.     In addition, the Lease and Sublease require Global and Asian Air to carry aviation third party legal liability insurance and hull insurance as "of the Delivery Date and continuing for a period of two years following the end of the Term ..." Ex. A at 36 ¶¶ 11.1, 11.2; Ex. B at 30 ¶¶ 12.1, 12.2 (identical provision requiring Asian Air to carry insurance).  The Lease provides that Global's obligation to insure the Aircraft "shall be discharged so long as [Asian Air's] insurance remains effective." Ex. A at 40 ¶ 12.1 (Assignment by Lessee).

**Global's and Asian Air's Breaches and Failure to Return the Aircraft and Aircraft Documents**

40.     On January 8, 2014, Global took delivery of the Aircraft and Aircraft Documents under the Lease in Miami, Florida.  *See* Ex. A at 4 ¶ 1.37 (defining "Delivery Location" in Miami); Ex. C (confirming delivery).  Global immediately transferred possession of the Aircraft and Aircraft Documents to Asian Air in Miami, Florida, pursuant to the Sublease.  *See* Ex. B at 4 ¶ 2.35 (same).  Pursuant to the Lease, the Sublease and applicable law, CAM retained title to the Aircraft.  *See* Ex. A at 12 ¶ 3.3; Ex. B at 11 ¶ 4.3

41.     Global failed to make payments for Basic Rent or Supplemental Rent to CAM as required by Paragraphs 4.2, 4.4, 4.5 and Appendix B of the Lease.  *See* Ex. A at 15-16 ¶¶ 4.2, 4.4, 4.5; Ex. A, Appx. B at 1 ¶¶ 2-3. On information and belief, Asian Air has made no payments to Global for amounts due under the Sublease.

42.     Accordingly, CAM sent a Notice of Non-Payment of Rent and Notice of Default in Other Obligations ("Notice of Non-Payment"), to Global on February 11, 2014, pursuant to Paragraph 16.1 of the Lease.  *See* Ex. A at 47 ¶ 16.1.  A true and correct copy of this Notice of Non-Payment is attached hereto as **Exhibit H.**

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

43.     Because Global subsequently failed to make required payments for the months of March 2014, April 2014, May 2014, June 2014, and July 2014, in accordance with the terms of the Lease, CAM sent a Notice of Termination of the Lease to Global on July 15, 2014, pursuant to Paragraph 16.2 of the Lease.  *See* Ex. D (Notice of Termination); *see also* Ex. A at 50 ¶ 16.2(d)(1).

44.     On July 18, 2014, CAM, through its counsel in Thailand, also sent a letter to Asian Air to provide notice that the Sublease, as subordinate to the Lease, was terminated and demanding return of the Aircraft and Aircraft Documents in accordance with the provisions of the Sublease.  Ex. E (Notice of Termination to Asian Air); Ex. B at 1 ¶ 1.1(b).

45.     The Notices of Termination instructed Global and Asian Air to return the Aircraft and Aircraft Documents to Wilmington Air Park, Wilmington, Ohio, USA.  *See* Ex. D, Ex. E.

46.     Despite this clear instruction and CAM's undisputed ownership, title, and right to possession of the Aircraft, Global and Asian Air have not returned the Aircraft or Aircraft Documents to CAM.  Unsurprisingly, neither Global nor Asian Air have taken any steps to de-register the Aircraft in Thailand and re-register it in the United States.

47.     Moreover, upon information and belief, Asian Air continues to operate the Aircraft in Thailand.  This continued operation substantially prejudices CAM because it puts the Aircraft at risk of loss or damage and prevents CAM from realizing the benefits of ownership, including the right to use or lease the aircraft.

48.     The risk of loss in this situation is especially grave as Asian Air has come within hours of allowing the insurance on the Aircraft to lapse on multiple occasions, paying just enough to extend coverage on a week-by-week basis.  On September 26, 2014, CAM was informed that Asian Air extended the insurance until December 4, 2014.

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

49.     CAM will continue to suffer this irreparable harm unless and until the Aircraft is returned. In fact, CAM has a prospective customer to lease the Aircraft upon its return. The potential loss of this opportunity, along with the indeterminate amount of time that it may take to re-let the Aircraft in the future, is just one example of the concrete and specific harm suffered by CAM by the wrongful detention of the Aircraft by Global and Asian Air.

## V.     CAUSES OF ACTION
### Count 1—Global's Breach of Contract by breaching the Lease

50.     CAM incorporates by reference the statements and allegations set forth in paragraphs 1 through 49, with the same force and effect as if fully rewritten herein.

51.     Global entered into a valid and binding agreement when it executed the Lease. Good and valuable consideration was exchanged in the form of delivery of the Aircraft and Aircraft Documents and the promise by Global to pay rent pursuant to the Lease, among other things.

52.     In the Lease, Global specifically promised to pay rent to CAM for the use of the Aircraft. Global also promised to return the Aircraft and Aircraft Documents to CAM in accordance with the return conditions under the Lease upon termination of the Lease.

53.     Global breached the Lease by, among other things, failing to pay the rent due thereunder and failing to return the Aircraft and Aircraft Documents in accordance with the return conditions under the Lease upon termination of the Lease.

54.     CAM has performed all of its obligations under the Lease and all conditions precedent to recovery and return of the Aircraft and Aircraft Documents, including initial delivery of the Aircraft, demand for payment, and demand for the return of the Aircraft and Aircraft Documents in accordance with the return conditions under the Lease. CAM is not in breach of the Lease.

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

55.   CAM has been and will continue to be damaged by Global's breaches of the Lease. CAM has suffered and will continue to suffer monetary damages well in excess of $75,000 in the form of unpaid past and future rent, among other monetary damages.

56.   CAM has also been damaged and will continue to be damaged by Global's failure to return the Aircraft and Aircraft Documents because of the inability of CAM to possess, use, or lease the Aircraft. This harm is irreparable and will continue until the Aircraft is returned to CAM.

57.   Because all conditions precedent to recovery have been satisfied, CAM brings this action for breach of contract and demands that Global be required to pay all damages suffered by CAM as a result of Global's breaches, be required to return the Aircraft and Aircraft Documents in compliance with the return conditions set out in the Lease, and be enjoined from future use of the Aircraft or efforts to prevent or frustrate its return to CAM.

### Count 2—Asian Air's Breach of Contract by breaching the Sublease

58.   CAM incorporates by reference the statements and allegations set forth in paragraphs 1 through 49, with the same force and effect as if fully rewritten herein.

59.   Asian Air entered into a valid and binding agreement when it executed the Sublease. Good and valuable consideration was exchanged in the form of delivery of the Aircraft and Aircraft Documents and the promise by Asian Air to pay rent pursuant to the Sublease, among other things.

60.   CAM was an intended beneficiary of the Sublease and thus has standing to enforce its terms because the contracting parties, Global and Asian Air, intended CAM to benefit from Asian Air's performance of its obligations under the Sublease, including but not limited to

the payment of rent and return of the Aircraft and Aircraft Documents upon termination of the Lease and Sublease.

61.     In the Sublease, Asian Air promised to pay rent for the use of the Aircraft.  It also promised to return the Aircraft and Aircraft Documents to CAM upon termination of the Sublease.

62.     Asian Air breached the Sublease by, among other things, failing to pay the rent due thereunder and failing to return the Aircraft and Aircraft Documents to CAM upon termination of the Lease and Sublease.

63.     CAM has performed all of its obligations under the Lease and Sublease and has satisfied all conditions precedent to recovery and return of the Aircraft and Aircraft Documents, including initial delivery of the Aircraft and Aircraft Documents and demand for payment. CAM is not in breach of the Lease or Sublease.

64.     CAM has been and will continue to be damaged by Asian Air's breaches of the Sublease.  CAM has suffered and will continue to suffer monetary damages well in excess of $75,000 in the form of unpaid past and future rent, among other monetary damages.

65.     CAM has  been damaged and will continue to be damaged by Asian Air's failure to return the Aircraft and Aircraft Documents due to the inability of CAM to possess, use, or lease the Aircraft.  This harm is irreparable and will continue until the Aircraft and Aircraft Documents are returned in compliance with the return conditions set out in the Lease.

66.     Because all conditions precedent to recovery have been satisfied, CAM brings this action for breach of contract and demands that Asian Air be required to pay all damages suffered by CAM as a result of Asian Air's breaches, be required to return the Aircraft and Aircraft

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

Documents in compliance with the return conditions set out in the Sublease, and be enjoined from future use of the Aircraft or efforts to prevent or frustrate its return to CAM.

### Count 3—Conversion
### (against Asian Air)

67.     CAM incorporates by reference the statements and allegations set forth in paragraphs 1 through 49, with the same force and effect as if fully rewritten herein.

68.     CAM is and at all relevant times has been the owner of the Aircraft and Aircraft Documents.  Additionally, upon termination of the Lease, CAM regained its right to exclusively possess the Aircraft and Aircraft Documents.  CAM has made demand upon Defendants to return the Aircraft and Aircraft Documents in the form of the Notice of Termination and subsequent instructions to return the Aircraft and Aircraft Documents.

69.     Asian Air has intentionally interfered with CAM's right to possession of the Aircraft and Aircraft Documents and exercised dominion and control over the Aircraft and Aircraft Documents by failing to return the Aircraft and Aircraft Documents and continuing to operate the Aircraft in Thailand.

70.     This intentional interference and exercise of dominion and control is wrongful because any rights Asian Air had to possess the Aircraft and Aircraft Documents ceased when the Lease was terminated by CAM.

71.     This intentional interference and exercise of dominion and control has deprived and will continue to deprive CAM of possession and use of the Aircraft and Aircraft Documents and the other rights of ownership.

72.     The intentional interference and exercise of dominion and control over the Aircraft and Aircraft Documents has damaged and will continue to damage CAM because CAM has been unable to use the Aircraft or to lease the aircraft to an alternative customer.

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

73.     Asian Air's conversions are malicious, egregious, and intentional because it entered into the Sublease, which clearly requires Asian Air to make timely payments for the use of the Aircraft.  Yet, Asian Air repeatedly failed to make payments as required by the Sublease. Moreover, Asian Air has not returned the Aircraft or Aircraft Documents and continues to use the Aircraft for its own benefit despite lawful demands made by CAM for its return.

74.     Accordingly, CAM demands that Asian Air be required to pay all damages suffered by CAM as a result of Asian Air's conversions, be required to return the Aircraft and Aircraft Documents to CAM in accordance with the return conditions set out in the Sublease, and be enjoined from future use of the Aircraft or efforts to prevent or frustrate its return to CAM.

### Count 4—Pre-Judgment and Post-Judgment Writ of Replevin,  Fla. Stat. § 78.055 (against all Defendants)

75.     CAM incorporates by reference the statements and allegations set forth in paragraphs 1 through 49, with the same force and effect as if fully rewritten herein.

76.     As set forth above, the property sought to be regained by CAM is specifically identified as a Boeing Model 767-2J6/ER Aircraft with serial number 23307 and Thai registration number HS-DCM, together with two aircraft engines, manufactured by Pratt & Whitney with Model number JT9D-7R4E and serial numbers 716909 and 716913, and the aircraft documents listed in Appendix C to the Lease, along with all other records, documents, log books, manuals, drawings, and data relating to the Aircraft and developed or caused to be developed by the operator of the Aircraft or required by the FAA, as updated and maintained through the Return Date.

77.     To CAM's best knowledge, information, and belief the value of the Aircraft and Aircraft Documents is presently approximately $6 million.

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

78.     The Aircraft and Aircraft Documents are located in Thailand. The Aircraft is registered in Thailand and is being operated by Asian Air.

79.     CAM is the rightful owner of the Aircraft and is entitled to exclusive possession of the Aircraft and Aircraft Documents after termination of the Lease. *See* Ex. A at 12 ¶ 3.3; Ex. B at 11 ¶ 4.3  CAM's ownership is evidenced and established by the Aircraft Title Document as well as the Lease and Sublease themselves, all of which are attached hereto. *See* Ex A (Lease); Ex. B (Sublease); Ex. G (Aircraft Title Document).

80.     Defendants came into possession of the Aircraft and Aircraft Documents on January 8, 2014, pursuant to the terms of the Lease and Sublease. *See, infra* ¶¶ 16, 34. Defendants' right to possess the Aircraft and Aircraft Documents terminated when the Lease was terminated by CAM on July 15, 2014. *See* Ex. D; Ex. E.  Defendants have continued to possess and wrongfully detain and operate the Aircraft.

81.     The Aircraft and Aircraft Documents have not been detained for a tax, assessment, or fine pursuant to law and have not been taken under an execution or attachment against the property of CAM.

82.     Accordingly, CAM respectfully requests that a pre-judgment writ of replevin immediately issue requiring Defendants to immediately return the Aircraft and Aircraft Documents to CAM in accordance with the return condition required by the Lease.

### Count 5--Declaratory Relief
### (against all Defendants)

83.     CAM incorporates by reference the statements and allegations set forth in paragraphs 1 through 49, with the same force and effect as if fully rewritten herein.

84.     In accordance with 28 U.S.C. §§ 2201-2202, CAM requests that this Court declare the respective rights and duties of CAM, Global, and Asian Air under the Lease and

Sublease. In particular, CAM seeks to settle the status of the Lease and Sublease and Global's and Asian Air's terminated right to possession thereunder. CAM seeks a declaration that the Lease and Sublease have been conclusively terminated and that any possessory rights in the Aircraft and Aircraft Documents that Global or Asian Air may have held thereunder have terminated therewith.

85.     Because the Lease and Sublease have been terminated, CAM seeks a declaration that it is entitled to immediate possession of the Aircraft and Aircraft Documents to the exclusion of Global, Asian Air, and all others.

86.     A valid case or controversy exists sufficient for this Court to declare the rights and remedies of the Parties in that Asian Air has not returned the Aircraft and Aircraft Documents and has continued to assert the right to possess the Aircraft and Aircraft Documents to the exclusion of CAM as if the Lease and Sublease were still in operation.

87.     This controversy is ripe for determination at this time because Defendants' actions in refusing to return the Aircraft and Aircraft Documents and continuing to operate the Aircraft demonstrate that they are violating and will continue to violate the terms of the terminated Lease and Sublease and that they will continue to wrongfully possess the Aircraft and Aircraft Documents.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff Cargo Aircraft Management, Inc. respectfully requests that the Court enter a final judgment awarding it a judgment against Defendants for the following:

      (a)    An order that CAM is entitled to immediate possession of the Aircraft and Aircraft Documents and a pre-judgment writ of replevin providing for seizure of the Aircraft and Aircraft Documents to effectuate that order;

      (b)    Preliminary and permanent injunctions requiring Global and Asian Air to cease operating the Aircraft, return the Aircraft and Aircraft Documents to CAM in

compliance with the return conditions required by the Lease and Sublease, and refrain from taking any actions to interfere with CAM's right to possession of the Aircraft and Aircraft Documents in order to stop the irreparable harm being suffered by CAM;

(c)     A declaration that the Lease and Sublease have been effectively terminated and any possessory rights in the Aircraft and Aircraft Documents that Global or Asian Air may have held have terminated therewith;

(d)     An order that Global and Asian Air breached their contractual obligations to CAM;

(e)     An order requiring Global and Asian Air to execute the Lease Termination Documents in a form or forms acceptable for filing with the FAA and the appropriate authorities in Thailand;

(f)     An award of all actual damages suffered or to be suffered by CAM as a result of these breaches, including but not limited to those set forth as liquidated damages in the Lease;

(g)     An order that Asian Air is liable for conversion of the Aircraft and Aircraft Documents due to its improper failure to return the Aircraft and Aircraft Documents to CAM;

(h)     An award of all actual damages suffered or to be suffered by CAM as a result of this conversion, including punitive damages if appropriate;

(i)     Pre and post judgment interest on any and all amounts awarded to CAM;

(j)     An award of all reasonable and necessary attorneys' fees and costs incurred by CAM in bringing these claims; and

(k)     Any and all other additional relief to which CAM is entitled.


Dated this 13th day of October, 2014.

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131

Respectfully submitted,

BAKER & McKENZIE LLP
*Attorneys for Plaintiff Cargo Aircraft Management,
Inc.*
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: 305-789-8900
Facsimile:  305-789-8953

By: s/ Lee Stapleton _____
    Lee Stapleton
    Florida Bar No. 356778
    lee.stapleton@bakermckenzie.com
    Jodi A. Pandolfi
    Florida Bar No. 102787
    Jodi.pandolfi@bakermckenzie.com

## VERIFICATION

I, _GEORGE A. GOUZER_, an individual, under penalties of perjury, declare that I

have read the foregoing Complaint and that the facts stated here are true and correct.

Dated: _OCTOBER 13, 2014_

438335-v1\MIADMS

Baker & McKenzie, LLP, Sabadell Financial Center, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131